McDOWELL and wife v. BLUE RIDGE AND ATLANTIC
RAILWAY COMPANY.

(Filed 27 May, 1907).

1. Contract — Conditions — Limitations — Performance. — When the
time for the performance of a condition of a contract is strictly
limited, forfeiture is incurred by non-performance within the
time.  A deed granting a right-of-way to the defendant railway
company upon consideration of benefits thereby to accrue, with
the provision that if the defendant should fail or neglect for a
period of five years from the date of the conveyance to construct
its line of railway thereon it should revert to the grantor, will,
in the absence of any controlling equitable element, restrict the
right of defendant to complete its line of road within the period
fixed therefor.

2. Same—Equitable Excuse.—Upon failure to perform the condition
that its line of road shall be completed within five years, equity
will not relieve against a forfeiture upon the ground that defend-
ant, pursuant to a statute affecting its construction, concen-
trated its force on some other part of its line.

3. Same—Railroads—Notice.—The doctrine that equity will afford
relief in preventing the enforcement of a forfeiture, has no appli-
cation when there is a total failure on the part of the one seeking
it to perform the condition, without sufficient equitable excuse.
When the plaintiff retains possession of the lands granted defend-
ant for a right-of-way to be used for railroad purposes within the
period of five years, and within that time limit the defendant
had not begun to perform its part of the contract, the estate
revests in him at once upon the conditions broken, and his notifi-
cation to defendant's contractors not to enter upon the land is a
sufficient manifestation of his intention to hold by reason of the
breach of the condition.

4. Same—Forfeiture—Defense.—While in some cases equity will re-
lieve against a forfeiture, it will not do so when the plaintiff is
standing upon his legal rights under a contract fixing the time
limit for defendant's performance of the condition, and when
there is nothing harsh or inequitable in its terms or enforce-
ment.

5. Same—Condemnation Proceedings.—When equitable relief against
a forfeiture under a time limit, in a conveyance of lands for

144—46

railroad purposes, cannot be successfully sought, the defendant railway company is confined to condemnation proceedings under the statute.

Civil action, tried before *O. H. Allen, J.,* trial by jury being waived by consent, at the Spring Term, 1907, of the Superior Court of Macon County. From a judgment for plaintiff, defendant appealed.

This proceeding was instituted in the Superior Court of Macon County by the plaintiffs, A. L. McDowell and wife, against defendant, Blue Ridge and Atlantic Railway Company, alleging that defendant, as authorized by its charter to do, had entered, occupied and appropriated for the purpose of locating, grading, constructing and operating a railroad, a strip of plaintiffs' land one hundred feet in width, particularly described in the petition. Petitioners prayed that commissioners be appointed to assess their damages, etc. Defendant answered the petition, admitting the entry upon plaintiffs' land for the purpose set forth, and alleged that it made such entry by virtue of the right and title conferred upon it by a deed (a copy of which is attached to the answer) executed by plaintiffs to said corporation, bearing date 24 May, 1901. It appears, by an inspection of said deed, that plaintiffs, on said day, conveyed to defendant a strip of land of one hundred feet, which was sufficiently described. The consideration set forth in the deed is "the benefits that will accrue to them by reason of the construction and extension of a railway through and over their lands and the further consideration of one dollar." Following the *habendum* in said deed are the following words: *"Provided,* that if the above-granted land shall cease to be used for railroad purposes, then the same is to revert to and become the property of the said parties of the first part, or their heirs: *Provided further,* that if the party of the second part shall fail and neglect for a period of five years from this date to construct its line of

railway over the premises hereby granted, then, and in that event, the title to said lands shall revert to the parties of the first part, their heirs and assigns, without any obligation on the parties of the first part to re-enter for condition broken." Upon the coming in of the answer and the reply of plaintiffs, the parties submitted the cause to the decision of the Court upon an agreed state of facts, the material portions of which are as follows:

Plaintiffs were, on 23 May, 1901, the owners of the land upon which defendant has entered as alleged. Defendant was duly incorporated by chapter 87, Private Laws 1901, and is authorized to construct and operate a railroad in Macon County, in this State. On 24 May, 1906, plaintiffs notified defendant's contractors at work on said road not to enter upon or do any work on their said land. At that time no work of grading had been done thereon, the defendant having concentrated its forces on another part of said line as a result of the passage by the Legislature of North Carolina of chapter 630, Laws 1905. On 7 June, 1906, defendant entered upon and occupied the strip of land described in the petition for railway purposes, and on 30 June, 1906, this proceeding was begun. Pending the proceeding, the work of grading over the land has been practically finished, except surfacing, but no ties or track have been laid. About fifty per cent. of the work of grading the entire line of railway from the Georgia State line to Franklin had been completed on 24 May, 1906, and about seventy-five per cent. of the grading between the Georgia line and Prentiss, a station on said railway, five miles from Franklin, was completed on said day. No track nor ties had been laid on any part of said railway, nor any part of the grading been completed, ready for the ties and track, on the said 24 May, 1906, but parts or sections of the grade on said line had been approximately built, ready for the surfacing or subgrading

necessary for exact grade.   Other facts regarding the prog-
ress of the work during the intervening years are set forth
which are not material to the decision of the cause.   The
relation which defendant company bore to the Tallulah Falls
Railway Company is also stated.   The Court, upon the
agreed facts, appointed commissioners to go upon that por-
tion of plaintiffs' land occupied by the defendant and assess
his damages.   Upon the coming in of the report, after hear-
ing exceptions thereto, judgment was duly rendered in the
Superior Court, at a regular term, condemning for defend-
ant's use a right-of-way over plaintiffs' land and assessing the
damages therefor.   Defendant excepted and appealed.

There are several assignments of error in the record, but
they are all involved in the two contentions argued in this
Court:

1. That, in the light of the facts agreed upon, there has
been no forfeiture by defendant.

2. That if there has been such forfeiture at law, upon the
allegations in the answer and the facts agreed upon, the de-
fendant is entitled to be relieved therefrom by a court of
equity.

*Horn & Mann* for plaintiffs.
*Jones & Johnston* and *Shepherd & Shepherd* for defendant.

CONNOR, J., after stating the facts: It will be noted that
the language used by the grantors confines the defendant to
the construction of "its line of railroad over the premises
hereby granted"—and not the construction of the whole of
the proposed road.   This was evidently for the benefit of the
grantee, whose title was not to be dependent upon the com-
pletion or maintenance of the road, nor was the title to be
perfected by beginning its construction.   While the courts
do not favor forfeitures and will, in case of doubt, so construe
language that estates shall vest where there is a condition

precedent, and, when vested, be protected from being divested on account of conditions subsequent, at the same time, where, in solemn instruments, under seal, parties use language incapable of but one construction, force and effect will be given to it, and their intention, as manifested by their written words, be effectuated.   There is no room for controversy in regard to the meaning of the language in this deed.   We are not called upon to inquire why this peculiar language was used.   It appears, however, that the proposed road was to be of considerable length, and doubtless to be constructed at heavy cost and to consume a long period of time, and that many changes in conditions would occur before its completion.   In view of these and possibly other reasons not known to us, the grantor was unwilling to burden his lands with this somewhat indefinite easement for more than five years.   How all of this is we do not know, and for that reason the only way in which we can safely interpret their contract is to give effect to its language.   "If the time for the performance of the condition is strictly limited, forfeiture is incurred by non-performance within the time.   In all cases where a time is set for the doing or performance of the matter contained in the condition, be it to pay money, make an estate or the like, it must be done at the time agreed upon and set down in the condition.   *   *   *   If the condition be that a building shall be erected on the granted land within five years, for municipal purposes, a failure to erect the building within the time named is a breach of the condition, for which a forfeiture may be enforced."   1 Jones on Convey., sec. 684, citing *Clark v. Brookfield,* 81 Mo., 503, 51 Am. Rep., 243, which sustains the text.   In *Morrill v. Railroad,* 96 Mo., 174, no time was fixed within which the road was to be constructed.   The case is rested upon the peculiar facts in the record.   In *Preston v. Railroad,* 11 Iowa, 15, it is said that by construction "more is meant than the mere making of the

roadbed; * * * it. implies preparation and readiness for use." We can have no doubt that the failure of defendant to "construct its line of road over the premises hereby granted" within the five years worked a forfeiture.

Defendant next insists that no entry was made for "condition broken." Two answers occur to the mind in response to this objection: 1. The deed expressly provides that no entry shall be necessary, or, in the language of the deed, there is to be "no obligation on the parties to re-enter." 2. On the day upon which the condition was broken plaintiff was in possession. It was not contemplated that defendant should enter until it began the construction of the road. "If the grantor is, himself, in possession when the condition is broken, the estate revests in him at once, and his possession is presumed to be for the purpose of holding under the forfeiture. If he is already in possession, it is, however, in some cases, declared that the grantor must manifest an intention of holding by reason of the breach of the condition." 1 Jones Conv., 722. It is admitted that the grantors, on the day of the forfeiture, notified defendant's contractors not to enter upon the land. If required to do anything to revest the estate, by reason of condition broken, it would seem that he did all that was possible. At law the estate revested and the defendant's right to enter was gone. Its entry thereafter was by virtue of its right to do so under its charter, for the purpose of constructing a railroad, and could not affect plaintiffs' right to pursue his remedy for compensation. The right to enter, followed by condemnation and payment of compensation, usually but inaccurately called damages, vests in the corporation the easement as provided by its charter. The defendant, conceding the forfeiture at law, earnestly contends that upon the agreed facts the case comes within the protective principle of equity jurisprudence, whereby relief is granted against forfeiture.

As we have seen, on 24 May, 1906, the estate which had been conveyed by plaintiffs to defendant came to an end and revested in the plaintiffs as if it had never been out of them; in other words, they were in, as of their original estate, by reverter on account of condition broken. Is it within the province, or the power, of a court of equity to destroy the estate now in plaintiffs and revest it in the defendant? No point is made of the fact that this alleged right is set up as an equitable counter-claim in a proceeding for condemnation. Probably it is the only way open to defendant to do so. That courts of equity have, from time immemorial, relieved against forfeitures is elementary. In doing so the chancellors have evolved rules based upon equitable principles and precedents for their guidance. The jurisdiction is not exercised arbitrarily, and in every case where the chancellor may think that the party taking advantage of the forfeiture should not, upon merely ethical grounds, do so. One underlying principle by which the equity for relief has been granted is that the intention of the parties is thereby effectuated.

It is also well settled that, where there has been substantial part performance of a condition involving a work requiring time for completion, equity will relieve and prevent the harsh and oppressive enforcement of the forfeiture. Many cases are cited illustrating this familiar principle. The difficulty here is that the condition is that the defendant shall construct the road over the premises granted within the time fixed, and on the day named it had constructed no part of the road; "no work of grading had been done" thereon. There was a total failure to perform the condition. The only reason assigned for such failure is that "as a result of some legislation" its force was concentrated on some other part of its line. This legislation required a part of the road to be finished within a time which we presume made it necessary to use the force on it. We do not perceive how this matter affected the

McDowell *v.* Railway Co.

rights of the plaintiffs under the deed. The defendant knew the condition in its deed and the time within which the work must be done. There is no suggestion that by an unforeseen or uncontrollable condition the defendant was prevented from constructing the road across plaintiffs' land. Again, this case is not like a deed made to secure the payment of a debt, as a mortgage, in which the measure of damages for failure to perform the condition is fixed. The parties must be presumed to have contracted with reference to the surrounding conditions and had some purpose in fixing their rights and obligations, with the results to follow a failure to discharge them promptly. It is true that the consideration was the benefits to be enjoyed by the building of the road, but it is not stated that the defendant was induced to build the road by reason of the grant of the right-of-way or title to the strip of land, or that any money has been expended by reason of anything said or done by plaintiffs. In *Railway v. South Orange,* 58 N. J. Eq., 83, there was substantial part performance of the condition. Plaintiff had expended large sums in the construction of the railway over the streets of the town. The failure to *finish* the work was caused by conditions over which plaintiff had no control. To have enforced the forfeiture would have entailed the loss of large sums to the plaintiff. We think that there is a clear distinction between the two cases. In *Gardner v. Lightfoot,* 71 Iowa, 577, there was part performance and the parties could not be placed *in statu quo.* This is the limitation put upon all of the cases and in accordance with the equitable doctrine laid down. 1 Pomeroy Eq., 451. Bispham says: "But equity will not, in general, and in the absence of special circumstances calling for interference, give relief in cases of forfeiture growing out of breach of covenant for repairing, insuring or doing any specific act." It will be observed that while in many cases equity will not enforce a forfeiture, the plaintiff

here is not invoking equitable relief; he is standing upon his legal right—his contract. There is nothing harsh or inequitable in the terms of the contract of the time fixed for constructing the road over his premises. During the five years the value of his land was probably impaired by the burden upon it; he may well have been willing to carry the burden during that time, but no longer; this is what his deed declares. At the end of the five years he simply says, "Take my land, but pay me for it." We cannot see in the principles of equity jurisprudence any reason why he may not do so. To hold otherwise would seriously impair the freedom and integrity of contract. If the road had been constructed within the time limited in the deed the plaintiffs were bound; it was not done, and the defendant may build its road, but must pay for the right-of-way. This is the contract. The judgment must be

Affirmed.